UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America, | : |
| *Plaintiff,* | : |
| v. | : S2 14 Cr. 534 (JSR) |
| Harvey Newkirk, | : |
| *Defendant.* | : |

# DEFENDANT HARVEY NEWKIRK'S
# MOTION *IN LIMINE* AND OPPOSITION TO THE ADMISSION
# OF UNCHARGED BOXING ALLEGATIONS AS DIRECT EVIDENCE
# AND AS "OTHER CRIMES" PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)

HARRIS, O'BRIEN, ST. LAURENT &
CHAUDHRY LLP
111 Broadway, Suite 1502
New York, NY 10006
T. (212) 785-5550
F. (212) 202-6206

*Attorneys for Defendant Harvey Newkirk*

**TABLE OF CONTENTS**

Preliminary Statement ................................................................................................................... 1

Argument ....................................................................................................................................... 5

   A.   The Uncharged Boxing Allegations Are Not Admissible As Direct Evidence ................... 5

      1.   Applicable Law ............................................................................................................ 5

      2.   The Uncharged Boxing Allegations Are Not Admissible as Direct Evidence
          Because They Are Not "Inextricably Intertwined" With The Charged Crimes ............... 6

   B.   The Uncharged Boxing Allegations Are Not Admissible Pursuant to
      Fed. R. Evid. 404(b) ............................................................................................................ 7

      1.   Applicable Law ............................................................................................................ 7

      2.   The Government Cannot Possibly Show Relevance ...................................................... 10

      3.   If the Evidence Has Any Probative Value, It is Outweighed by Rule 403 Factors ....... 13

CONCLUSION ............................................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Old Chief v. United States*,
   519 U.S. 172 (1997) ............................................................................................................. 7

*United States v. Corey*,
   566 F.2d 429 (2d Cir. 1977) ................................................................................................. 9

*United States v. Curley*,
   639 F.3d 50 (2d Cir. 2011) ......................................................................................... 8, 9, 10

*United States v. Garcia*,
   291 F.3d 127 (2d Cir. 2002) ................................................................................................. 9

*United States v. Levy*,
   731 F.2d 997 (2d Cir. 1984) ................................................................................................. 8

*United States v. McCallum*,
   584 F.3d 471 (2d Cir. 2009) ......................................................................................... 8, 9, 11

*United States v. Nachamie*,
   101 F. Supp. 2d 134 (S.D.N.Y. 2000) .................................................................................. 8

*United States v. Nektalov,*
   325 F. Supp. 2d 367 (S.D.N.Y. 2004) .................................................................................. 6

*United States v. Peterson*,
   808 F.2d 969 (2d Cir. 1987) ................................................................................................. 9

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*,
   828 F. Supp. 2d 698 (S.D.N.Y. 2011) ........................................................................... 5, 6, 7

*United States v. Townsend,*
   2007 WL 1288597 (S.D.N.Y. May 1, 2007) ..................................................................... 5, 7

**Statutes**

18 U.S.C. § 1028A ....................................................................................................................... 4

18 U.S.C. § 1343 .......................................................................................................................... 4

18 U.S.C. § 1349 .......................................................................................................................... 4

Fed. R. Evid. 104 .......................................................................................................................... 1

Fed. R. Evid. 104(c) ............................................................................................................ 14

Fed. R. Evid. 403 ................................................................................................... 8, 9, 13, 14

Fed. R. Evid. 404(b) ..................................................................................................... passim

Mr. Harvey Newkirk, the Defendant, through undersigned counsel, respectfully submits Defendant Harvey Newkirk's Motion *In Limine* and Opposition to the Admission of Uncharged Boxing Allegations as Direct Evidence and as "Other Crimes" Pursuant to the Federal Rule of Evidence 404(b), as noticed in the Government's Letter, dated October 5, 2015 (the "Government Letter", attached as Exhibit A)). These uncharged offenses are wholly unrelated to the crimes charged in the indictment, and thus should not be admitted as direct evidence in the case at bar. Moreover, because these uncharged offenses are not relevant to any disputed issues in the indictment, they are not admissible under Rule 404(b), and should be excluded as more prejudicial than probative under Federal Rule of Evidence 403. The defense denies that these allegations are true, so if this Court should find that they are admissible, the defense will strenuously challenge the factual basis and thus will require an evidentiary hearing outside the presence of the jury. For these reasons, as set forth below, the Court should preclude the government from submitting this evidence. In the alternative, the defense requests a hearing outside of the presence of the jury to determine whether the government can meet its burden for the production of this evidence. Fed. R. Evid. 104.

The government's Motion *In Limine* filed October 12, 2015, seeks to preclude Mr. Newkirk's use of an expert witness. The defense will answer the government's motion in our Response. In addition, should the government at trial attempt to introduce any evidence or acts in furtherance of the conspiracy that predate August 2013, the defense will move to exclude any such evidence.

## PRELIMINARY STATEMENT

By letter dated October 5, 2015, the government provided defense counsel with notice of its intention to introduce evidence of Mr. Newkirk's alleged participation in a scheme to defraud

1

a lender named Joshua Mailman. The government alleges that *three years* prior to the charged conduct relating to the attempted purchase of Maxim magazine in 2010, Mr. Newkirk and Calvin Darden Jr. ("Junior") falsely represented to Mailman that a $450,000 loan to finance a "purported boxing match" would be secured by a promissory note from Calvin Darden Senior ("Senior") which they forged (the "Boxing Allegations"). Gov't Ltr. at 1. The government implies that the boxing match was never a serious proposition. *Id*. Instead, the government alleges that after the boxing match fell through, Mr. Newkirk and Junior chose to default on the loan and pocket the $450,000. In a desperate effort to show that the Boxing Allegations are probative of disputed issues in the indictment, the government claims that Mailman was offered an interest in the Maxim Transaction to compensate Mailman for his losses, though the government chose not to list him as a "victim" in the indictment. *Id*. at 1-2. In another use of innuendo, the government suggests that The Reign Entertainment Group, LLC ("Reign")—an entity owned and operated by Senior—was vaguely involved in both the boxing match deal and the attempted purchase of Maxim. *Id*.

As an initial matter, Mr. Newkirk wholly denies the allegations set forth in the Government's Letter. Mr. Newkirk has not been charged or indicted with any crime related to these events, presumably, because of the weakness of its proof on this issue. But now, having made the tactical choice not to charge Mr. Newkirk with this crime, the government seeks to slip this evidence in through the back door under a less demanding standard. The law does not allow this kind of cheap shot.

In its effort to admit this irrelevant and unduly prejudicial evidence for the purpose of bolstering its already weak case against Mr. Newkirk, the government invokes two alternative theories. First, the government contends that the Boxing Allegations are admissible as direct

evidence of "the manner in which Newkirk and Junior's criminal relationship developed and the basis for their relationship of mutual trust." Gov't Ltr. at 2. Alternatively, the government maintains that the Boxing Allegations are admissible as "other acts" evidence pursuant to Fed. R. Evid. 404(B), for the purpose of proving: knowledge and intent with respect to the alleged conspiracy, Mr. Newkirk's purported motive, the nature and background of the alleged conspiracy, the manner in which the alleged criminal relationship between Mr. Newkirk and Junior developed, and the "basis for [their] relationship of mutual trust." *Id*.

The defense denies that the Boxing Allegations are probative of any of the purposes listed above. These uncharged offenses allegedly began in 2010—more than three years before any sale of Maxim was contemplated—and ended in 2011. Moreover, the Boxing Allegations are entirely unlike the complex fraud contemplated by the indictment, which involved a multitude of sophisticated financial firms, investors, accountants, and international law firms. Finally, the Boxing Allegations are unnecessary and cumulative as evidence of the relationship between Mr. Newkirk and Junior since Mr. Newkirk acknowledges that he had a relationship with Junior and will not dispute at trial that they engaged in prior business transactions.

Should the Court allow the government to admit evidence concerning the Boxing Allegations, there will essentially have to be a mini-trial, or a "trial within a trial." An extensive amount of time will be required to parse the terms, documentation, parties, background, and efforts in support of the $450,000 promissory note, and various other transactions involving Junior, Mr. Newkirk, and Mailman between 2010 and 2011. In addition, the jury will have to comb through numerous documents to determine the facts of the transactions involved. This sideshow will substantially extend the trial and further complicate the proceedings. This should not be allowed.

3

In truth, the uncharged Boxing Allegations represent a clear attempt by the government to introduce propensity evidence to unfairly prejudice the jury against Mr. Newkirk.  Admission of such evidence is inconsistent with the law.  Accordingly, the government's arguments should be rejected.

### BACKGROUND OF THE MAXIM TRANSACTION[1]

Maxim is a magazine that was owned by Alpha Media Group, Inc. ("Alpha Media"). After a syndicate of investors led by Cerberus Capital Inc. ("Cerberus") foreclosed on Alpha Media, and following a failed attempt by Cerberus to turn the sinking business around, the investors decided to sell this distressed asset.

During the bidding process in July 2013, Reign and Senior engaged Bryan Cave LLP ("Bryan Cave") and Harvey Newkirk (then Counsel at Bryan Cave) to help them purchase the assets of Alpha Media and acquire Maxim (and other magazines) (the "Maxim Transaction").  In connection with this acquisition, Reign asked Mr. Newkirk to create two new entities to consummate the transaction—Darden Media Group ("DMG") and Darden Media Holdings ("DMH") which would be owned and operated by Senior.  Ultimately, DMG won the bid to buy Maxim for $31 million; and, on or about September 9, 2013, Cerberus and DMG executed an Asset Purchase Agreement ("APA").  After signing the APA, DMG attempted to secure $31 million in financing prior to the scheduled closing date of September 16, 2013.  But DMG failed to find sufficient financing in time, and the closing never happened.

In the ensuing months, Mr. Newkirk represented DMG in its efforts to close the deal, including its search for financing.  This representation is the basis for charges against Mr. Newkirk of conspiracy to commit Mail Fraud (18 U.S.C. § 1349), Wire Fraud (18 U.S.C. §

---

[1] The facts set forth herein come from the government's document production.

1343), and Aggravated Identity Theft (18 U.S.C. § 1028A).  In short, for the present purposes, Mr. Newkirk has been accused of:  (1) obtaining a $3.1 million bridge loan from OpenGate Capital ("OpenGate") for the Maxim Transaction by pledging, without his permission, securities owned by Senior; (2) providing a fake bank statement to an investor named Mark Weinberg in effort to procure a $5.5 million bridge loan for the Maxim Transaction; (3) pledging the stock that had already been pledged to OpenGate to Comvest Partners ("Comvest") without Senior's permission; and (4) negotiating a $20 million loan from Shane McMahon in exchange for a personal guarantee by Senior, including a personal pledge of Senior's stock, without Senior's permission.

The defense denies these charges in their entirety.

### ARGUMENT

**A.     The Uncharged Boxing Allegations Are Not Admissible As Direct Evidence**

1. <u>Applicable Law</u>

The government argues that evidence of the Boxing Allegations is admissible as direct evidence of the charged crimes, without resorting to Rule 404(b).  But, the government bears the burden of demonstrating the admissibility of "other act" evidence.  *United States v. Stein,* 521 F. Supp. 2d 266, 268 (S.D.N.Y. 2007); *see also United States v. Gushing,* 2002 WL 1339101, at *2 (S.D.N.Y. June 18, 2002).  Here the Court should find that the government is unable to meet this burden.

In order for the Boxing Allegations to be admitted as direct evidence of the offenses charged in the indictment (and, therefore, not subject to Rule 404(b)), the government must show that the evidence is "'crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed.'" *United States v. Townsend,* 2007 WL

1288597, at *2 (S.D.N.Y. May 1, 2007) (citation omitted); *see also United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 706 (S.D.N.Y. 2011) (district court must determine "whether the Uncharged Transactions are 'intrinsic' to or 'inextricably intertwined' with the alleged conspiracies, rendering FRE 404(b) inapplicable"). To be admissible, it must be "manifestly clear that the evidence in question is intrinsic proof of the charged crime" or "the proper course is to proceed under Rule 404(b)." *United States v. Nektalov,* 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

    2.  The Uncharged Boxing Allegations Are Not Admissible as Direct Evidence Because They Are Not "Inextricably Intertwined" With The Charged Crimes

As stated above, we dispute the allegations set forth by the government in this indictment. However, even if accepted, the government's allegations fail to show how the Boxing Allegations are "intrinsically intertwined" with the charges in the indictment. *Rubin/Chambers,* 828 F. Supp. 2d at 706.

The Boxing Allegations are clearly separate and distinct from the charged crimes in the indictment. *First*, these uncharged offenses allegedly occurred between 2010 and 2011, and ended in 2011; there is no allegation of an ongoing conspiracy, and those events ended two years prior to the Maxim Transaction. *Second*, the subject matter of these alleged conspiracies differed. The Boxing Allegations allegedly arose from a deal involving Mr. Newkirk and Junior on the one hand, and Mailman on the other, to finance a "purported boxing match." Gov't Ltr. at 1. But, the charges in the indictment arose from DMG's efforts to purchase Maxim magazine for $31 million. This latter transaction involved different individuals and entities, including: Mark Weinberg, Shane McMahon, Comvest Partners, OpenGate Capital, Cerberus, and Alpha Media. This complete lack of overlap makes clear that the Boxing Allegations are in no way "*inextricably intertwined*" with the Maxim Transaction. *Rubin/Chambers,* 828 F. Supp. 2d at

6

706.

The government attempts to overcome this insurmountable problem by citing Mailman's tangential involvement in the Maxim Transaction and incorrectly claiming that Reign was to be used by Junior to acquire Maxim.  On the contrary, Mailman neither financed the Maxim Transaction, nor is Mailman a "victim" in the indictment.  Moreover, DMG—and *not Reign*—entered into the Maxim Transaction.

The bottom line is that the murky story underlying the uncharged Boxing Allegations is obviously neither "crucial" to nor "intrinsic proof" of the crimes charged.  *Townsend,* 2007 WL 1288597, at *2; *Rubin/Chambers,* 828 F. Supp. 2d at 706.  Moreover, to the extent that the government claims that the uncharged conduct is necessary to prove the manner and development of the business relationship between Junior and Mr. Newkirk, Gov't Ltr. at 2, this evidence is far more prejudicial than probative: the defense will not dispute at trial that Mr. Newkirk and Junior had a business relationship that predated the charged offense.  Accordingly, the uncharged Boxing Allegations should not come into evidence.

> B. The Uncharged Boxing Allegations Are Not Admissible Pursuant to Fed. R. Evid. 404(b)

  1. Applicable Law

Alternatively, the government argues that evidence of the Uncharged Offenses is admissible pursuant to Federal Rule of Evidence 404(b).  However, the Uncharged Offenses are both irrelevant and unfairly prejudicial to Mr. Newkirk, and should be excluded.

Rule 404(b) sets forth the well-known rule against using prior bad acts as propensity evidence.  *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").  The rule recognizes the very real danger that a fact finder will

use prior act evidence to infer that someone acted wrongly on the occasion at issue simply because they acted wrongly in the past. *See, e.g., Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Rule 404(b) carves out exceptions to the general rule against admissibility of other act evidence, namely, where the court finds that the evidence is offered for a purpose other than propensity, "such as providing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The test for determining admissibility of "other acts" under Rule 404(b) is well settled, but its application turns on the specific facts of each case. As the Second Circuit has explained:

> When reviewing the admission of evidence pursuant to Rule 404(b), we consider whether (1) the prior crimes evidence was "offered for a proper purpose"; (2) the evidence was relevant to a disputed issue; (3) the probative value for the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction.

*United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009). As the proponent of the evidence, the government bears the burden of proof as to admissibility, and the district court should not "presume that such evidence is relevant or admissible." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011); *accord United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000) citing, *inter alia*, *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984) ("The government . . . must explain in detail the purposes for which the evidence is sought to be admitted.").

Where the government offers Rule 404(b) evidence to show knowledge and intent, the touchstone test of relevance is the high degree of similarity between the proffered evidence and the charged crimes. As the Second Circuit recently held:

> To satisfy the relevance inquiry, the evidence must be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the . . . inference advocated by the proponent of the evidence." The district court must consider all the evidence presented to the jury and

8

> determine whether a reasonable jury could find the advocated inference. The court abuses its discretion if the evidence is "not sufficiently similar" to the charged conduct or if "the chain of inferences necessary to connect [the] evidence with the ultimate fact to be proved [is] unduly long."

*Curley*, 639 F.3d at 57 (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987) (emphasis added). Put another way, prior act evidence is not probative unless there is "a 'close parallel' between the crime charged and the acts shown." *United States v. Corey*, 566 F.2d 429, 431 (2d Cir. 1977) (emphasis added); *see also United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) ("The government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime.").

Admission of 404(b) evidence is a two-step process. Even if the government shows relevance, the Court must then engage in a Rule 403 analysis to determine if the potential for unfair prejudice outweighs any probative value. As the Second Circuit stated in *Curley*:

> If the evidence is relevant, the district court must determine if its potential for unfair prejudice substantially outweighs its probative value. See Fed. R. Evid. 403. The evidence's probative value "depends largely on whether or not there is a close parallel between the crime charged and the acts shown." Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." If the other acts tend to prove a fact not in issue or "to excite emotions against the defendant," they create a prejudicial effect. The district court abuses its discretion when it admits "other act" evidence with a high possibility of jury misuse but with only slightly more probative value than other evidence on the same issue.

*Curley*, 639 F.3d at 57 (citations omitted). When engaging in this balancing test, it is incumbent upon courts to be especially skeptical of uncharged bad acts since they do not "bear the imprimatur of the judicial system and indicia of official reliability." *McCallum*, 584 F.3d at 476.

Based on these principles, it is readily apparent that the government here cannot satisfy the standards for admissibility of the proffered evidence. Indeed, it can clear neither the relevance hurdle of Rule 404(b) nor the balancing hurdle of Rule 403. For either of these

9

reasons, the government's should be precluded from introducing the Boxing Allegations into evidence.

### 2. The Government Cannot Possibly Show Relevance

*Knowledge and Intent*.  As noted above, to show that the Boxing Allegations are probative of Mr. Newkirk's "knowledge and intent" in this case, the government must establish that the proffered evidence is "sufficiently similar" to the charged crimes.  *Curley*, 639 F.3d at 57.  The Boxing Allegations must so "closely parallel them" that a reasonable juror could infer an intent to engage in the crimes charged from the evidence of other acts.  *Id.*  The government cannot possibly meet this exacting standard because the proffered 404(b) evidence and the charges on trial are not parallel.

There is little or no similarity between the Boxing Allegations and the Maxim Transaction.  In the Government's Letter, it alleges that three years prior to the Maxim Transaction, Mailman loaned Newkirk and Junior $450,000 "for a purported boxing match" in exchange for a promissory note between Senior and Mailman, executed without Senior's knowledge.  Gov't Ltr. at 1.  The government implies that the boxing match was never a serious proposition.  Instead, Mr. Newkirk allegedly leveraged the credibility of Senior in order to pocket Mr. Mailman's cash and benefit to the tune of $450,000.

But the charged offenses are unlike the alleged acts described in the Government's Letter. In the indictment, the government alleges that Mr. Newkirk used his position as an attorney to falsely represent Senior and obtain financing for the $31 million acquisition of Maxim Magazine by DMG.  This is both a difference of "dollars and cents" and of the nature of the acts involved. Mr. Newkirk purportedly engaged in a massive and complex fraud that involved a multitude of players, including sophisticated businesses, individuals, and financial firms worth billions of

dollars. Indeed, Mr. Newkirk was allegedly able to pull wool over the eyes of OpenGate, Comvest, Bryan Cave, Michael Weinberg, Shane McMahon, Cerberus, Alpha Media, and their various constituents and advisors.

In fact, if one believes the government's allegations, Mr. Newkirk's intent in the Boxing Allegations was completely different than his intent in the Maxim Transaction that underlies the indictment. In the Maxim Transaction, Mr. Newkirk was committed to making the deal happen because (according to the government), he would only have benefited—through nebulous rewards by the higher-ups at Bryan Cave—if the deal closed. Evidence of Mr. Newkirk's commitment to complete the Maxim Transaction include his efforts as counsel to form DMG and DMH, draft employment agreements, and procure financing for the deal. On the other hand, the government's claim regarding the uncharged Boxing Allegations is specifically that Mr. Newkirk and Junior never intended to hold the boxing match, but rather used it as a ruse to get a loan they did not intend to repay. Finding the parallel here requires quite a long walk.

Even if the government could prove that the Boxing Allegations are true, it would shed no light whatsoever on Mr. Newkirk's willingness to engage in the massive fraud alleged in the indictment. Taken to its extreme, the government is essentially arguing that any alleged act of dishonesty is admissible under Rule 404(b) to prove that the same person engaged in a wholly different act involving dishonesty. This is exactly the kind of propensity argument that Rule 404(b) prohibits.

*Background and Relationship*. Because Mr. Newkirk acknowledges and will not dispute at trial the existence of a prior relationship with Junior, evidence of the Boxing Allegations is unnecessary for the purpose of background or establishing a relationship between Mr. Newkirk and Junior. *See McCallum*, 584 F.3d at 476 (when determining whether to admit "other acts" the

court should consider whether relevant to a "disputed issue"). Indeed, Mr. Newkirk will not dispute that he and Junior were friends and that they entered into several financial transactions together prior to the Maxim Transaction. From the government's Rule 3500 disclosure, it is clear that Junior will testify accordingly; and, from the discovery produced, the government has emails establishing that Junior and Mr. Newkirk have known each other since at least 2010. Accordingly, evidence of the Boxing Allegations is unnecessary and cumulative for this purpose.

*Motive*. Given that the Boxing Allegations and the crimes alleged in the indictment are entirely different, the Boxing Allegations cannot possibly prove "motive" in this case. First, Mr. Newkirk's motive in each alleged conspiracy differs. In the Boxing Allegations, Mr. Newkirk and Junior allegedly leveraged Senior's credibility and the mirage of a boxing match to pocket $450,000 from an unsuspecting investor. On the other hand, the indictment describes a complex conspiracy involving a multitude of sophisticated financial firms, investors, accountants, and international law firms, where the only conceivable benefit to Mr. Newkirk—reputational or financial—would occur if the transaction actually happened.

Second, with two to three years between the two conspiracies, the government has not adequately explained how uncharged misconduct that occurred between 2010 and 2011 had any bearing on Mr. Newkirk's motives in 2013. In the government's sole attempt to establish this connection, it vaguely claims that "[i]n an effort to repay Mailman for the loan, Newkirk and Junior offered Mailman an interest in the revenue from various deals, including the Maxim transaction." Gov't Ltr. at 1. However, the government does not list Mailman as a "victim" in the indictment, nor did Mailman contribute money in the Maxim Transaction. The Boxing Allegations are simply not relevant. Accordingly, the Court should bar the government from introducing evidence of the Boxing Allegations to prove "motive."

      3.  <u>If the Evidence Has Any Probative Value, It is Outweighed by Rule 403 Factors</u>

Even if the Court were to find that the evidence at issue carries some minor probative value, it is substantially outweighed by the improper prejudice it also carries and the likelihood that it will confuse the issues, mislead the jury, and unduly extend the length of the trial. For these reasons, the evidence should be excluded under Rule 403.

As to the issue of unfair prejudice, there is a serious danger that the Boxing Allegations would unfairly taint the jury's view of Mr. Newkirk's character and his capacity for truthfulness – precisely the type of improper propensity proof that Rule 404(b) was designed to exclude. Indeed, allegations of fraud of the kind alleged in the Government's Letter can easily stir feelings of resentment among the jurors. We respectfully ask that this Court protect the Defendant from this significant risk of unfair prejudice, as is required under the applicable law.

Moreover, since the facts surrounding the Boxing Allegations are vigorously disputed by Mr. Newkirk, there will essentially have to be a mini-trial, or a "trial within a trial." An extensive amount of time will be committed to parsing the terms, documentation, parties, background, and efforts in support of the $450,000 the promissory note, and various other transactions involving Junior, Mr. Newkirk, and Mailman between 2010 and 2011. The jury will be required to examine an entire separate batch of documents to determine if, indeed, the facts of the Boxing Allegations are as the government suggests; because if not, and they *are not*, then the Boxing Allegations sideshow will be just that. And, it will also be a colossal waste of time. This will unduly extend the length of the proceedings and further complicate what is already shaping up to be a far too complicated and confusing trial.

If the Court chooses not to exclude the Boxing Allegations because it suspects that there could be something in the allegations which Mr. Newkirk's jury should hear, this suspicion is

properly investigated in a hearing outside the presence of the jury. Put simply, the government is wrong about some fundamental facts of the uncharged Boxing Allegations and the government's theory of admissibility is contingent on those fundamental facts. If that mini-trial takes place in front of this jury, the result could be that we waste a few days of their time, confuse them, and all only to determine that Mailman had no stake in the Maxim Transaction and Reign was not going to acquire Maxim in any event. Mr. Newkirk's jury, and Mr. Newkirk, should be spared this much ado about nothing.

For all of these reasons, the proffered evidence should be excluded under Rule 403 as well as under 404(b).

### C. Government Attempts To Enlarge The Scope Of The Conspiracy And Challenge The Use Of Experts

On June 12, 2015, at a hearing on Mr. Newkirk's motion for a bill of particulars, the Court the government to state the time when Mr. Newkirk joined the conspiracy. In response, the government stated that Mr. Newkirk joined this alleged conspiracy in August 2013. June 12 Hearing Tr. 2:18-3:22. To the extent that the government attempts to introduce any evidence or acts in furtherance of the conspiracy that predate August 2013, we will move to exclude any such evidence. United States v. Murray, 297 F. 2d 812, 819 (2d Cir. 1962) ("The function of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise, and to this end the government is strictly limited to proving what it has set forth in it.")

Moreover, in the government's Motions *In Limine*, it seeks to preclude Mr. Newkirk from using an expert witness at trial. The defense intends to offer the expert witness, and will fully answer the government's challenge in Mr. Newkirk's Response to the government's Motions *In Limine*.

## CONCLUSION

For the reasons set forth above, Mr. Newkirk respectfully requests that the Court preclude the government from introducing the uncharged Boxing Allegations as direct evidence or pursuant to 404(b).

In the alternative, because the burden is on the government to show that the Boxing Allegations are admissible, the Defendant requests a hearing outside the presence of the jury to determine whether the government can meet its burden. Fed. R. Evid. 104(c).

Further, should the government attempt to introduce any evidence or acts in furtherance of the conspiracy that predate August 2013, the defense will move to exclude any such evidence.

Finally, the defense will fully answer the government's motion to to preclude Mr. Newkirk's use of an expert witness in the defense's Response to the government's Motions *In Limine*.

DATED:    New York, New York
          October 12, 2015

Respectfully submitted:

_____/s/_____
Priya Chaudhry
HARRIS, O'BRIEN, ST. LAURENT,
& CHAUDHRY LLP
111 Broadway, Suite 1502
New York, New York 10006
(212) 785-5550

*Attorneys for Defendant Harvey Newkirk*