*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 5, 2015

**BY EMAIL**

Priya Chaudhry, Esq.
Harris, O'Brien, St. Laurent & Chaudhry LLP
111 Broadway, Suite 1502
New York, NY 10006

   Re: *United States* **v.** *Harvey Newkirk*,
      **S2 14 Cr. 534 (JSR)**

Dear Ms. Chaudhry:

  The defendant, Harvey Newkirk ("Newkirk"), is charged in the above-referenced superseding indictment (the "Indictment") with one count of conspiracy to commit wire fraud, one substantive count of wire fraud, and one count of aggravated identity theft, each in connection with Newkirk's participation in a scheme to obtain loans towards financing the acquisition of Maxim Magazine and related assets ("Maxim") based on lies regarding, among other things, the collateral for those loans. The Indictment alleges that from at least in or about August 2013, up to and including on or about February 11, 2014, Newkirk and Calvin Darden, Jr. ("Junior") worked together to raise funds for the purchase of Maxim by, among other things, representing to victim-lenders that loans would be collateralized by assets of Calvin Darden, Sr. ("Senior"), despite Senior's ignorance of any such promises. We write to inform you of the Government's intent to present at trial certain evidence regarding the nature and background of the conspiracy and the criminal relationship between the co-conspirators, as well as evidence admissible pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)").

  Specifically, the Government expects to present evidence of the following: In or about 2010, a lender named Joshua Mailman ("Mailman") loaned approximately $450,000 to Newkirk and Junior, for the purpose of funding a purported boxing match featuring professional boxer Floyd Mayweather. Newkirk and Junior falsely represented to Mailman that his loan would be secured by a promissory note from Senior, despite Senior's ignorance of such promise. Newkirk told Junior, in sum and substance, that when speaking to Mailman in Senior's presence, Newkirk and Junior needed to steer the conversation away from how the transaction would be collateralized. Newkirk and Junior subsequently defaulted on the loan from Mailman. In an effort to repay Mailman for the loan, Newkirk and Junior offered Mailman an interest in the revenue from various other deals, including the Maxim transaction. Moreover, in about February 2011, Newkirk, in an effort to extricate himself from any dispute with Mailman regarding this default, provided Mailman with Newkirk's rights to revenue earned by the Reign Entertainment Group, LLC ("Reign"), which is the same entity that had pursued the Mayweather fight and that

Priya Chaudhry, Esq.
October 5, 2015
Page 2 of 2

was to be used by Junior and Newkirk to purchase Maxim.  At the time of that assignment to Mailman, and as recited by Newkirk himself, Newkirk's interest in Reign was held by Invictus Pugilist Ventures, LLC ("Invictus"), a company of which Newkirk was the managing member.  In return for this assignment of interest in Reign to Mailman, Newkirk received a release of Mailman's interest in Invictus, as well as the right to receive a profit participation in Mailman's newly assigned interest in Reign.

      Although some of this conduct pre-dates the time period set forth in the Indictment, it is admissible to prove, among other things, the nature and background of the conspiracy and the nature of the relationship between Newkirk and Junior.  In particular, this evidence demonstrates the manner in which Newkirk and Junior's criminal relationship developed and the basis for their relationship of mutual trust.  Moreover, this evidence is admissible under Rule 404(b) to prove, among other things, Newkirk's knowledge and intent with respect to the conduct charged in the Indictment (*e.g.*, Newkirk's knowledge of Senior's nonparticipation in financing or collateralizing loans in connection with Reign's business ventures), Newkirk's motive for the conduct charged in the Indictment (*e.g.*, Newkirk's direct financial interest in Reign, the entity that Newkirk and Junior planned to use to purchase Maxim, as a result of Newkirk's assignment of interests to Mailman and the resulting profit participation arising therefrom), the nature and background of the conspiracy, the manner in which the criminal relationship between Newkirk and Junior developed, and the basis for the relationship of mutual trust between Newkirk and Junior.

                                        Very truly yours,

                                        PREET BHARARA
                                        United States Attorney


                    By:   __/s/ Sarah Paul_____
                          Andrew C. Adams/ Sarah E. Paul
                          Assistant United States Attorneys
                          (212) 637-2340 / (212) 637-2326