UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
UNITED STATES OF AMERICA

                                              S2 14 Cr. 534 (JSR)

                                              AFFIDAVIT OF
     v.                                        HARVEY NEWKIRK

HARVEY NEWKIRK,

                       Defendant.
---------------------------------------------------------

STATE OF NEW YORK
COUNTY OF NEW YORK  s.s.:

      HARVEY NEWKIRK, being duly sworn, deposes and says:

      1. I am the defendant in this action. I respectfully submit this affidavit in connection with the omnibus motion being filed on my behalf.

      2. I am an attorney admitted to practice in New York State. I earned my undergraduate degree from Cornell University in 1998 and graduated from Columbia Law School in 2001. I was admitted to practice in New York in 2003.

      3. My professional areas of concentration are, and have always been, corporate and transactional law. I began my career at the firm of Thelen, Reid, Brown, Raysman & Steiner in 2001. In 2005, I joined the firm of K&L Gates. I worked at K&L Gates for approximately eight years, until June 2013, at which time I joined Bryan Cave LLP as a Counsel in its Business/Transactional group in the firm's New York office.

1

4. In July 2013, Bryan Cave was engaged by Reign Entertainment Group ("Reign") in connection with its proposal to acquire the holding company that owned Maxim Magazine. I was both the originating attorney and the attorney in charge of the matter. The matter came to Bryan Cave by virtue of my relationships with Calvin Darden, Sr., Reign's principal, and his son, Calvin Darden, Jr. In connection with that engagement, I met with, spoke with, and corresponded with, both Dardens on a regular basis for over six months.

5. On or about February 12, 2014, I had just left the office for the day when Jay Dorman, then a partner at Bryan Cave, called me and asked me to return. When I returned, Mr. Dorman directed me to a conference room. An attorney whom I recognized as a Bryan Cave litigator, but whose name I cannot presently recall was present, perhaps along with one other person. Also present were a Secret Service agent, Paul Deal, and a FBI agent, James Hilliard. Mary Beth Buchanan, a partner in Bryan Cave's white-collar criminal defense practice, then entered the room. The Bryan Cave litigator introduced me to Ms. Buchanan.

6. Agents Deal and Hilliard then explained to me that Calvin Darden, Jr. had been arrested earlier that day, and that they wanted to interview me about the proposed acquisition of Maxim. I agreed to speak with the agents, and Ms. Buchanan stayed with me. While I do not recall the exact words that the Bryan Cave litigator used, I do recall having the understanding that Ms. Buchanan was present at this meeting to represent me. My interactions with Ms. Buchanan during the meeting, and Ms. Buchanan's behavior, confirmed to me that she was there to act as my counsel. On several occasions during the interview, I consulted

2

privately with Ms. Buchanan, as one would with his counsel. Most of the consultations dealt with my desire to honor my attorney-client privilege obligations to Reign and the Dardens, but on other occasions I consulted with Ms. Buchanan regarding issues that impacted me personally. Further, at no time either before or during the February 12, 2014 meeting did Mr. Dorman, the Bryan Cave litigator, or Ms. Buchanan indicate to me that Ms. Buchanan was present for any purpose other than to represent me. Indeed, during the meeting, Ms. Buchanan asked on my behalf what my status was regarding the investigation. The agents told her that I was a subject. Ms. Buchanan did not stop the interview, nor did she advise me that I could end the interview and retain my own counsel.

7. Later on February 12, 2014, following my meeting with Secret Service Special Agents Deal and Hilliard, I spoke via telephone with Vincent Alfieri, the Managing Partner of Bryan Cave's New York office. During that call, Mr. Alfieri told me that I was being placed on indefinite, paid, administrative leave, effective immediately. However, Mr. Alfieri said nothing to me about retaining my own counsel, nor did he say anything else to me that led me to believe that Bryan Cave and Ms. Buchanan would not continue to represent me in this matter.

8. On February 14, 2014, I received a voicemail from Special Agent Deal, who asked me to meet with him and Special Agent Hilliard. Because Special Agent Deal did not leave a contact number, I emailed Vincent Alfieri to see if he had Special Agent Deal's contact information. Mr. Alfieri gave me the contact information, and I spoke with the agents later that day, without any counsel present. In our telephone conversation, Mr. Alfieri did not ask whether I had

obtained counsel to represent me, nor did he say anything else to disabuse me of my belief that Bryan Cave was representing me in the investigation.

9. Throughout March of 2014, I received telephone calls and emails from various Bryan Cave attorneys with questions regarding my representation of Reign and the Dardens. Among the attorneys who emailed or called me were Jay Dorman, Vincent Alfieri, Noah Weissman, a Bryan Cave litigation partner, and Katherine Porter, a Bryan Cave litigation associate. From these calls and emails, I understood that Bryan Cave was conducting an inquiry into the Maxim acquisition matter. I believed at the time that the impetus for the investigation was the institution and threat of civil litigation regarding the failed attempt to acquire Maxim. Throughout this time, I continued to believe that Bryan Cave represented me.

10. On or about March 28, 2014, I was called into Bryan Cave's offices for an in-person interview. Among the Bryan Cave attorneys present were Mary Beth Buchanan, Jay Dorman, and Noah Weissman. Some of the attorneys present took notes. During this interview, Noah Weissman spoke to me about the possibility of civil litigation occurring. Mr. Weissman emphasized that if I were called to [be deposed in connection with or ]testify in any civil proceeding, I should be vigilant about preserving the attorney-client privilege that existed between Bryan Cave, Reign and/or Darden, Sr. The interview was cordial and non-adversarial. I left the meeting believing that Bryan Cave still represented me.

11. As of the time of the March 28, 2014 meeting, I did not know what an *Upjohn* warning was. However, since that time, I have come to understand that

4

when an organization's attorney interviews the organization's employees, the attorney must explain to the employee that the attorney represents the organization and not the employee; that the interview is being conducted to enable the attorney to render advice to the organization; and that the organization holds the attorney-client privilege, and may choose to waive the privilege. I have no recollection of anyone saying anything remotely like that to me at the March 28, 2014 meeting with the Bryan Cave attorneys. Certainly, if anyone had said anything to me along those lines, I would have recalled it.

12. I can also categorically state that no one at Bryan Cave ever informed me of a potential conflict of interest between the firm and myself, nor did anyone ever ask me to consent to a joint representation, or to otherwise consent to any waivers of any kind.

13. In late April or early May of 2014, Mr. Alfieri informed me that Bryan Cave would cease its relationship with me. I resigned from the firm on June 11, 2014. Government agents later interviewed me on two other occasions, without counsel present, on January 22, 2015 and March 17, 2015.

*Harvey Newkirk*

Sworn and subscribed to before
me this 1st day of July, 2015

*Notary Public*

JAMES M. KENEALLY
Notary Public, State of New York
No. 02KE4817368
Qualified in Nassau County
Commission Expires April 30, 20__

5