UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
UNITED STATES OF AMERICA,

                *Plaintiff,*

                                    S2 14 Cr. 534 (JSR)

     v.

HARVEY NEWKIRK,

                *Defendant.*
--------------------------------------------------------

## DEFENDANT HARVEY NEWKIRK'S
## PROPOSED JURY INSTRUCTIONS

HARRIS, O'BRIEN, ST. LAURENT,
& CHAUDHRY LLP
40 Wall Street, 53rd Floor
New York, New York 10005
*Attorneys for Defendant Harvey Newkirk*

Pursuant to Fed. R. Crim. P. 30, defendant Harvey Newkirk respectfully requests the Court to include the following instructions in its charge to the jury.  Mr. Newkirk respectfully requests and reserves the right to submit additional instructions as the trial progresses.

## REQUEST NO. 1:  CONSPIRACY INSTRUCTION

Mr. Newkirk is charged in Count 1 of the indictment with conspiracy to commit wire fraud in violation of Section 1349 of Title 18.  In order for the defendant to be found guilty of that charge, the government must prove each of the following three essential elements beyond a reasonable doubt:

First, the existence of the conspiracy, that is, the existence of an agreement between two or more people to commit at least one crime as charged in the Indictment;

Second, that the defendant became a member of the conspiracy knowingly and willfully; and

Third, that one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Let us now separately discuss these three elements.[1]

---

[1]  Adapted from Sand et al., Modern Federal Jury Instructions, 19-3.

### First Element -- Existence of Agreement

The first element, which the government must prove beyond a reasonable doubt, is that two or more persons entered into the unlawful agreement charged in Count One of the Indictment, here, a conspiracy to commit wire fraud.

A conspiracy is kind of a criminal partnership.  The essence of the crime of conspiracy is a combination, an agreement, or an understanding of two or more persons to accomplish by concerted action a criminal or unlawful purpose.  The conspiracy alleged here is the agreement to commit the crime of wire fraud and this is an entirely distinct and separate offense from the actual commission of that crime.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  It is <u>not</u> enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  You must find that there was a plan to commit wire fraud as alleged in the Indictment.

If you find beyond a reasonable doubt that two or more persons came to an understanding to violate the law and to accomplish an unlawful plan, then the government will have sustained its burden of proof as to this element.[2]

---

[2]  Adapted from the government's proposed charge in *United States v. Ivanova*, 11 Cr. 614 (VM) (S.D.N.Y. 2014); Sand et al., Modern Federal Jury Instructions, 19-4 and 19-9; the charge of the Hon. Robert P. Patterson, *United States v. Liying Lin*, 12 Cr. 938 (RPP) (S.D.N.Y. 2014); the charge of the Hon. Richard J. Sullivan in *United States v. Peirce*, 06 Cr. 1032 (S.D.N.Y. 2008); *United States v. Rubin*, 844 F.2d 979, 983-84 (2d Cir. 1988) (generally discussing proof of agreement).

**Second Element --Membership in the Conspiracy**

The second element, which the government must prove beyond a reasonable doubt in order to establish the offense of conspiracy, is that the defendant knowingly and willfully became a participant in, or member of, the conspiracy.

An act is done "willfully" if it is done voluntarily and intentionally, and with the specific intent to do something the law forbids.

To act "knowingly" means to do an act voluntarily and intentionally and not because of mistake or accident.

"Unlawfully" simply means contrary to the law.  A defendant need not have known that he was breaking any specific law.  He needs only to have been aware of the unlawful nature of his acts.

If you are satisfied that the conspiracy charged in Count One existed, you must ask yourselves who the members of the conspiracy were.  In deciding whether Mr. Newkirk was, in fact, a member of the conspiracy, you should consider whether, based upon all of the evidence, the government has proven that he knowingly and willfully joined in the conspiracy.  You should ask, "did the government prove that he participated in the conspiracy with knowledge of its unlawful purpose and with the specific intention of furthering its business or objectives."

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome.  You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that a defendant had a financial interest, then you may properly consider that as a factor to determine whether or not he was a member of the charged

conspiracy.  What the evidence must show beyond a reasonable doubt is that the defendant associated himself with the venture in some fashion, or participated in it as something that he wished to bring about or sought by his actions to make succeed.

As I mentioned a moment ago, before a defendant can be found to have been a conspirator you must find that the government proved that he or she knowingly joined in the unlawful agreement or plan.  The key question, therefore, is whether a defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

A defendant's participation in the conspiracy must be established by evidence of his own acts or statements, and the reasonable inferences that can be drawn from such acts or statements.  A defendant's participation in a conspiracy cannot be proven solely on the basis of the acts or statements of others.  For example, the statement by Person A to Person B that Person C is or was a member of the conspiracy is not sufficient evidence to prove Person C's involvement in the conspiracy absent evidence of a statement or act by Person C that would tend to support that conclusion.

A defendant's knowledge is a matter of inference from the facts proved. In that regard, I instruct you that to become a member of a conspiracy, a defendant need not have known the identities of each and every other member, nor need he or she have been apprised of all of their activities.  Moreover, a defendant need not have been fully informed as to all of the details of the conspiracy in order to justify an inference of knowledge on his part. Each member may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others played minor parts in the scheme. An equal role is not what the law requires.

A conspirator's liability also is not measured by the duration of his participation in the conspiracy.  To convict a defendant of conspiracy it is not necessary for him to have been a member of the conspiracy from the beginning. The joining of a new party in a conspiracy, or the dropping out of a party to the conspiracy once it has been formed, does not remove guilt of the original conspiracy.  Different persons may become members at different times.  They may perform different parts of it. They need not be aware of all the ramifications of the conspiracy nor know all of the details concerning the unlawful agreement.

If, as alleged in this case, a conspiracy existed, and if the defendant knew of the conspiracy and purposely took some part in carrying it into effect, he became part of it and may be found guilty or conspiracy.

I caution you, however, that a defendant's mere presence at the scene of an alleged crime does not, by itself, make him or her a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member of the conspiracy.  A person may know, or be friendly with, a criminal without being a criminal himself.  Mere similarity of conduct, or the fact that different individuals have been assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

I also caution you that mere association, knowledge or acquiescence in the unlawful plan, without participation, is not sufficient.  Moreover, the mere fact that the acts of a defendant happen to further the purposes of the conspiracy does not make the defendant a member.  The law requires more.  What is necessary is that the defendant participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the

intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking. In so doing, he thereby becomes a knowing and willing participant in the unlawful agreement -- that is to say, a conspirator.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, he is presumed to continue his membership in the venture until its termination, unless it is shown by some affirmative proof that he withdrew and disassociated himself from it.[3]

---

[3] Adapted from the government's proposed charge in *United States v. Ivanova*, 11 Cr. 614 (VM)(S.D.N.Y. 2014); Sand et al., Modern Federal Jury Instructions, 19-6, 3A-1, 3A-3; the charge of the Hon. Robert P. Patterson, *United States v. Liying Lin*, 12 Cr. 938 (RPP) (S.D.N.Y. 2014); the charge of the Hon. Richard J. Sullivan in United States v. Peirce, 06 Cr. 1032 (S.D.N.Y. 2008); *see also United States v. Aleskerova*, 300 F.3d 286, 292-93 (2d Cir. 2002) (describing manner in which government may show participation in conspiracy with required state of mind); *Rea*, 958 F.2d at 1214 ("The defendant's knowledge of the conspiracy and participation in it with the requisite criminal intent may be established through circumstantial evidence. A defendant need not have joined a conspiracy at its inception in order to incur liability for the unlawful acts of the conspiracy committed both before and after he or she became a member."); *United States v. Miranda-Ortiz*, 926 F.2d 172, 175-76 (2d Cir. 1991) (generally discussing proof required to show membership in conspiracy), cert. denied, 112 S. Ct. 347 (1991); *United States v. Maldonado-Rivera*, 922 F.2d 934, 960 (2d Cir. 1990) (same), cert. denied, 111 S. Ct. 2858 (1991).

**Third Element – Overt Act**

Finally, the third element the government must prove beyond a reasonable doubt is that one of the members of the alleged conspiracy or agreement knowingly performed at least one overt act and that this overt act was performed during the existence or life of the conspiracy and was done to somehow further the goal(s) of the conspiracy or agreement.

The term "overt act" means some type of outward, objective action performed by one of the parties to, or one of the members of, the agreement or conspiracy which evidences that agreement. The overt act may, but for the alleged illegal agreement, appear totally innocent and legal.[4]

---

[4] Adapted from O'Malley et al. Federal Jury Practice and Instructions § 31:07 (6th ed.); *United States v. Mahaffy*, 693 F.3d 113, 123 (2d Cir. 2012)(overt act a required element under 18 U.S.C. 1349).

**Acts and Declarations of Co-Conspirators**

You will recall that I have admitted into evidence the acts and statements of other people who the government claims were co-conspirators of Mr. Newkirk.  In determining the factual issues before you, you may consider as evidence against a defendant any acts or statements made by any of his co-conspirators.

If you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in Count One, then you may consider, as evidence of defendant's guilt, any acts done or statements made in furtherance of the conspiracy charged in Count One by persons also found by you to have been members of that particular conspiracy.  This is so even if such acts were done and statements were made in the defendant's absence and without his or her knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence of the conspiracy, and in furtherance of the unlawful scheme.  If the acts were done, or if the statements were made by someone who you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, they may not be considered by you as evidence of the guilt of the defendant under consideration.

I caution you here to consider only the particular conspiracy charged in Count One. Only if the alleged co-conspirator engaged in the particular conspiracy charged can his acts or statements be admitted against other defendants who are also charged in that conspiracy.

Since these acts may have been performed and these statements may have been made outside the presence of Mr. Newkirk and even done or said without his knowledge, these

acts or statements should be examined with particular care by you before considering them against Mr. Newkirk who did not do the particular act or make the particular statement.[5]

---

[5] Adapted from O'Malley et al. Federal Jury Practice and Instructions § 31:06 (6th ed.).

## REQUEST NO. 2:  WIRE FRAUD

Count Two alleges that the defendant, Harvey Newkirk, committed wire fraud in connection with the attempted purchase of Maxim Magazine.

Federal law makes it a crime to use interstate or international wire communications in furtherance of a fraudulent scheme.  Before a defendant can be convicted of a given wire fraud charge, the government must prove beyond a reasonable doubt:  first, that there was a scheme to defraud one or more persons of money or property by means of false or fraudulent pretenses, representations, or promises; second, that the defendant knowingly and willfully participated at some point in the scheme to defraud, with knowledge of its fraudulent nature and with a specific intent to defraud; and third, that in the execution of the scheme to defraud, at least one use of interstate or international wire communication occurred.

We will consider these three elements in turn:

As to the first element, a "scheme to defraud" is a plan or design to obtain money or property by means of deceit.  The deceit – in the form of "false or fraudulent pretenses, representations, or promises" – can be an outright lie or a misleading omission but it must relate to a material fact – that is, a fact that a reasonably prudent person would consider important in making a decision to part with money or property. The scheme alleged here is that from in or about August 2013 to on or about February 11, 2014, the defendant Harvey Newkirk was involved in a scheme to fraudulently induce various lenders to provide financing for the purchase of Maxim Magazine.

In order to establish a scheme or artifice to defraud, the government is not required to prove that the defendant himself originated the scheme to defraud.  It is sufficient if you find

that a scheme to defraud existed, even if originated by another, and that the defendant knowingly and intentionally participated in the scheme.  Similarly, while the government must prove that the scheme was intended to deprive one of money or property, the government is not required to prove that the scheme to defraud actually succeeded, that the defendant actually benefitted from the scheme to defraud, or that any victim actually suffered any loss from the scheme to defraud.

As to the second element – that the defendant participated at some point in the scheme knowingly, willfully and with a specific intent to defraud – to act "knowingly" means to act consciously and deliberately rather than mistakenly or inadvertently.  This includes, among other things, a requirement that the defendant have knowledge that he is participating in a fraudulent scheme.  To act "willfully" means to act voluntarily, purposely and with intent to do something unlawful.  To act with "specific intent to defraud" goes further, and requires that the defendant intend to deceive one or more of his victims in order to obtain money or property and to thereby harm one or more victims.

As to the third element – that at least one use of interstate or international wire communications occurred in execution of the fraudulent scheme – "wire" communication includes telephone, fax, and e-mail communications and also includes wire transfers of funds. It is not necessary that the wire communication itself contain a fraudulent representation; rather, it is sufficient if a wire was used to further or assist in carrying out the scheme to defraud and that it pass between two states or between the United States and a foreign country. Also, it is not necessary for the defendant to be directly or personally involved in sending the wire communication, as long as the communication was reasonably foreseeable in the execution of the scheme to defraud.

While each of the foregoing elements must be proved beyond a reasonable doubt, in addition, the government, in order to prove a given wire fraud charge, must establish that it is more probable than not that at least one of the wire communications that satisfies the third element at some point pass through one of the counties in the Southern District of New York: Manhattan, the Bronx, Westchester, Rockland, Putnam, Orange, or Sullivan.[6]

---

[6] Adapted from charge given in *United States v. George Salemo,* 11 Cr. 65 (JSR)(S.D.N.Y. 2015).

## REQUEST NO. 3: AGGRAVATED IDENTITY THEFT

Count Three of the Indictment charges Harvey Newkirk with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A.

Section 1028A provides, in pertinent part:

Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall [be guilty of a crime].

### Aggravated Identity Theft Elements

In order to prove the defendant guilty of aggravated identity theft, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant transferred, possessed, or used a "means of identification" of another person without authority;

Second, that the defendant transferred, possessed or used a "means of identification" of another person during and in relation to one of the offenses charged in Counts One and Two; and

Third, that the defendant acted knowingly and without lawful authority.[7]

---

[7] Adapted from Sand *et al., Modern Federal Jury Instructions*, 39A-51.

**First Element -- Transfer, Possession, or Use of Means of**
**Identification of Another Person**

The first element that the government must prove beyond a reasonable doubt is that the defendant transferred, possessed, or used a means of identification of another person without lawful authority.

The terms "transfer" and "use" have their ordinary, common sense meanings. The term "possess" means to have something within your control. It does not necessarily mean that you must physically have it in your hand. As long as something is knowingly in a person's actual control, he or she possesses it. For example, you possess things that are in your home even though, sitting here in court, you are not holding those possessions.

Now what does "means of identification" refer to? I instruct you that the term "means of identification" encompasses a name or number that may be used to identify a specific individual, including any name, social security number, date of birth, alien registration number, address, routing code, or telecommunication identifying information.[8]

---

[8] Adapted from the government's proposed charge in *United States v. Ivanova*, 11 Cr. 614 (VM)(S.D.N.Y. 2014); the charge of the Honorable Deborah A. Batts in *United States v. Alalim Barrie*, 07 Cr. 158 (DAB); the charge of the Honorable Shira A. Scheindlin in *United States* v. *William Nkrumah*, 07 Cr. 137 (SAS) (S.D.N.Y. 2007); the charge of the Honorable Kevin T. Duffy in *United States* v. *Juan Tureseo*, 06 Cr. 680 (KTD); Sand, *et al., Modern Federal Jury Instructions*, Instr. 35-49, 35-72, and 39A-49; *see also* 18 U.S.C. § 1028(d)(7)(defining "means of identification"); *United States v. Pelusio*, 725 F.2d 161, 167 (2d Cir. 1983) (instruction regarding possession); and *United States v. Gregg*, 01 Cr. 501 (S.D.N.Y. Jan. 31, 2003) (Preska, J.) (same).

**Second Element - During and in Relation to**
**Commission of Offenses Charged in Counts One and Two**

The second element the government must prove beyond a reasonable doubt is that the defendant wrongfully transferred, possessed, or used a "means of identification" of another person during and in relation to the commission of either Count One or Count Two.

"During and in relation to" means that the defendant's transfer, use, or possession of a means of identification of another person had a role in or facilitated, or had the potential of facilitating, the commission of the offenses alleged in either Count One or Count Two.

In order to find the defendant guilty of wrongfully transferring, possessing, or using a "means of identification" of another person during and in relation to one of those offenses, you must first find the defendant guilty beyond a reasonable doubt of that underlying offense. Accordingly, you may not find the defendant guilty on Count Three unless you first determine that he is guilty on either Count One or Count Two.

Finally, you must agree unanimously which count, Count 1 or 2, or both, comprises the underlying offense.[9]

---

[9] Adapted from the government's proposed charge in *United States v. Ivanova*, 11 Cr. 614 (VM) (S.D.N.Y. 2014); adapted from the charge of the Honorable Loretta A. Preska in *United States v. Diakite*, 08 Cr. 362 (S.D.N.Y. 2008); from the charge of the Honorable Robert P. Patterson in *United States v. Barrie*, 07 Cr. 158 (S.D.N.Y. 2009); and from the charge of the Honorable Kevin P. Castel in *United States v. Brown*, 07 Cr. 109 (S.D.N.Y. 2008); *see also Smith v. United States*, 508 U.S. 223, 239 (1993) (defining "during and in relation to" with regard to 18 U.S.C. § 924(c)).

**Third Element - Defendant Acted Knowingly and Without Lawful Authority**

The third element the government must prove beyond a reasonable doubt in relation to Count Three is that the defendant acted knowingly and without lawful authority in transferring, possessing, or using the means of identification of another person.

I have previously instructed you on the definition of the term "knowingly" and those instructions apply here.

With regard to the defendant's knowledge, I instruct you that, in order for the government to satisfy its burden of proof as to this element, the government must prove beyond a reasonable doubt that the defendant knew that the means of identification transferred, possessed, or used belonged to an actual person and that it was being used without lawful authorization.[10]

---

[10]  Adapted from the government's proposed charge in *United States v. Ivanova*, 11 Cr. 614 (VM) (S.D.N.Y. 2014); the charge of the Honorable Deborah A. Batts, *United States v. Alalim Barrie* in 07 Cr. 158 (DAB); and the charge of the Honorable Shira A. Scheindlin in *United States v. William Nkrumah*, 07 Cr. 137 (SAS) (S.D.N.Y. 2007); and Sand, *et al., Modern Federal Jury Instructions*, Instr. 39A-49; *see also Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009); *United States v. Ozuna-Cabrera*, 663 F.3d 496 (1st Cir. 2011)(collecting cases) (criminal liability under Section 1028A "does not require theft, or any other illicit method of procurement, of the means of identification").

**REQUEST NO. 4:  EXPERT TESTIMONY**

You have also heard testimony from a witness who is an expert in mergers and acquisitions and an attorney's role in such transactions.  An expert is allowed to express his opinion on those matters about which he has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, opinions, and reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept this witness's testimony merely because he is an expert. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.[11]

---

[11] Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 7-21.

### REQUEST NO. 5:  DEFENDANT'S OBLIGATIONS AS A LAWYER

You have heard during the course of this trial that the defendant, Harvey Newkirk, is a lawyer, and that he provided legal representation to a client with respect to that client's proposed acquisition of Maxim Magazine.

In considering the charges against Mr. Newkirk, you should consider the following obligations he had to his client.  Mr. Newkirk is not charged with the breach of any of these obligations, and while I am informing you of these obligations in order to inform your understanding of Mr. Newkirk's role, the breach or non-breach of these obligations do not give rise to any criminal liability.

### Lawyer's Duty to Advocate for his Client

As a lawyer, Mr. Newkirk had the obligation to work towards the achievement of his client's goals with reasonable diligence and promptness, and to abide by his client's decisions as to what those goals were, and the means by which those goals would be achieved, within the bounds of the law.[12]

### Duty of Confidentiality

Mr. Newkirk also had a duty of confidentiality toward his client.  This means that Mr. Newkirk was obligated to not knowingly reveal confidential information, or use confidential information to his client's disadvantage, or for Mr. Newkirk's advantage or that of a third person.  Confidential information is information gained during or relating to the representation of Mr. Newkirk's client, whatever its source, and includes privileged

---

[12] New York Rule of Professional Conduct 1.2 (a) and (d).

information, information that would be embarrassing or detrimental to his client if he disclosed it, or information that his client otherwise requested be kept confidential.[13]

### Having an Organization as a Client

You have heard evidence that Mr. Newkirk's client was a corporation. The same rules regarding a lawyer's obligation to abide by a client's decision, and to maintain a duty of confidentiality toward a client, apply when a lawyer represents an organization such as a corporation. A corporation acts through its officers, directors, employees and representatives. This means that when Calvin Darden, Jr., in his capacity as a director, officer, employee or representative of the corporation, communicated with Mr. Newkirk, Mr. Newkirk had the same obligations to the corporation regarding client confidentiality and honoring client directives as he would any other client.[14]

---

[13] New York Rule of Professional Conduct 1.6 (a) and (b) (2).

[14] New York Rule of Professional Conduct 1.13; Model Rule of Professional Conduct 1.13; Comment to Model Rule of Professional Conduct 1.13.

### REQUEST NO. 6:  USE OF WITNESS'S TESTIMONY

It must be clear to you by now that counsel for the government and counsel for the defendant are asking you to draw very different conclusions about various factual issues in the case.  Deciding these issues will involve making judgments about the testimony of the witnesses you have listened to and observed.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you.  How did the witness appear?  Was the witness candid, frank, and forthright; or, did the witness seem to be evasive or suspect in some way?  How did the way the witness testified on direct examination compare with how the witness testified on cross-examination?  Was the witness consistent or contradictory?  Did the witness appear to know what he or she was talking about?  Did the witness strike you as someone who was trying to report his or her knowledge accurately?  These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias.  Does the witness have a relationship with the government or the defendant that may affect how he or she testified?  Does the witness have some incentive, loyalty, or motive that might cause him or her to shade the truth?  Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

In this regard, you have heard from two witnesses, Calvin Darden, Jr., and Calvin Darden, Sr.

Calvin Darden, Jr. testified in accordance with a cooperation agreement with the government. The law permits the use of testimony from cooperating witnesses. However, the law requires that the testimony and motives of a cooperating witness be scrutinized with particular care and caution. After carefully scrutinizing the testimony of a cooperating witness and taking account of its special features, you may give it as little or as much weight as you deem appropriate.

Now, you have also heard the testimony of Mr. Calvin Darden, Sr., and you have heard evidence that Mr. Darden Sr. is a defendant in four separate civil cases related to the subject matter of this case – an attempt to purchase Maxim Magazine. I now instruct you that under the rules of evidence, Mr. Darden, Sr.'s testimony at this trial may be admissible in one of those other proceedings. You may consider whether the fact that testimony a witness gives in this case may be used in another proceeding could cause the witness to alter his or her testimony in an attempt to procure a favorable outcome in that other proceeding. You may consider this in weighing the credibility of Mr. Darden, Sr.

You should also consider whether a witness had an opportunity to observe the facts he or she testified about. Also, as to all witnesses, you should consider whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.[15]

---

[15] Adapted from charge given in *United States v. George Salemo,* 11 Cr. 65 (JSR) (S.D.N.Y. 2015); Federal Rules of Evidence 613, 1007; NY CPLR 4517.

### REQUEST NO. 7:  BAD REPUTATION FOR TRUTH AND VERACITY

The credibility of a witness may be discredited or impeached by evidence showing that the general reputation of the witness for truth and veracity is bad.

If you believe a witness has been so impeached and thus discredited during this trial, it is your exclusive right to give the testimony of that impeached witness such weight, if any, you think it deserves.

You may consider this evidence of bad reputation for truthfulness as one of the circumstances you assess in determining whether or not to believe the testimony of that witness.[16]

---

[16] Adapted from O'Malley et al. Federal Jury Practice and Instructions § 15:09 (6th ed.).

## REQUEST NO. 8:  TESTIMONY OF DEFENDANT, OR IN THE ALTERNATIVE, DECISION NOT TO TESTIFY

You should judge the testimony of Mr. Newkirk in the same manner as you judge the testimony of any other witness in this case.

(Or in the alternative)

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present evidence, because it is the government's burden to prove a defendant guilty beyond a reasonable doubt.  A defendant is never required to give proof that he or she is innocent.

Therefore, you must not attach any significance to the fact that the defendant did not testify.  No adverse inference may be drawn by you because he did not take the witness stand, and you may not consider it in any way in your deliberations in the jury room.[17]

---

[17] Adapted from O'Malley et al. Federal Jury Practice and Instructions § 15:12 (6th ed.); charge given in *United States v. George Salemo,* 11 Cr. 65 (JSR) (S.D.N.Y. 2015).

## REQUEST NO. 9: PROOF OF KNOWLEDGE OR INTENT
## — RULE 404(B) EVIDENCE

The government has introduced evidence about certain transactions [involving Joshua Mailman] that occurred prior to the transactions that are charged in this case. Evidence that Mr. Newkirk engaged in some act or conduct at some other time is not evidence or proof that the he performed a similar act at a later time.

You may not consider evidence of the transactions involving Mr. Mailman in determining whether Mr. Newkirk actually performed the acts charged in this indictment. Nor may such evidence be considered for any other purpose whatsoever, unless you first find beyond a reasonable doubt from other evidence in the case, standing alone, that Mr. Newkirk actually engaged in the offenses charged in this Indictment.

If you should find beyond a reasonable doubt from other evidence in the case that he did the acts alleged in the particular count you are considering, then you may then consider evidence of an alleged earlier act of a like nature in determining the state of mind or intent with which Mr. Newkirk acted.  Mr. Newkirk is on trial only for the acts or crimes alleged in the Indictment.

**REQUEST NO. 10: FALSUS IN UNO, FALSUS IN OMNIBUS**

If you believe that a witness knowingly testified falsely concerning any important matter, you may distrust the witness' testimony concerning other matters. You may reject all of the testimony or you may accept such parts of the testimony that you believe are true and give it such weight as you think it deserves.[18]

---

[18] Adapted from O'Malley et al. Federal Jury Practice and Instructions § 15:06 (6th ed.).

DATED:        New York, New York
              November 2, 2015

                                     Respectfully submitted:

                                       Priya Chaudhry
                                       HARRIS, O'BRIEN, ST. LAURENT,
                                       & CHAUDHRY LLP
                                       40 Wall Street, 53rd Floor
                                       New York, New York 10005
                                       (212) 785-5550

                                       *Attorneys for Defendant Harvey Newkirk*