UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                               :
  UNITED STATES OF AMERICA
                                                               :
  - v. -
                                                               :
  HARVEY NEWKIRK,                          S2 14 Cr. 534 (JSR)
                                                               :
         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING SUBMISSION**


                            PREET BHARARA
                            United States Attorney for the
                            Southern District of New York
                            One St. Andrew's Plaza
                            New York, New York 10007


Andrew C. Adams
Sarah E. Paul
Assistant United States Attorneys
-Of Counsel-

The Government writes in response to the defendant's sentencing submission of April 14, 2016 (the "Defense Submission" or "Def. Sub."), and specifically in response to the Defense Submission's proposed Guidelines calculation.  Although the Government does not seek a sentence of incarceration within the applicable Guidelines range, an accurate calculation of the applicable Guidelines sentencing range is a required step in the Court's process of reaching an appropriate sentence, 18 U.S.C. § 3553(a)(5), as well as a useful means of highlighting those aspects of Newkirk's crime, and his continued refusal to acknowledge that crime, that particularly warrant a significant term of incarceration.

For the reasons set forth in the Government's sentencing submission, dated April 14, 2016, a 22-point increase applies to the defendant's offense level on the basis of an intended loss of $37.4 million.  *See also* PSR ¶ 30.  The Defense Submission contends that intended loss should not be the basis for assessing a loss amount under the Guidelines because "he did not have the subjective intent to purposely inflict pecuniary harm."  Def. Sub. at 15.  To the contrary, the evidence at trial demonstrated that Newkirk was fully aware of the amounts of money to be received from lenders under false pretenses, that he subjectively intended to induce those lenders to provide those amounts, and that neither Newkirk nor Darden had any intent to return funds or repay loans received through fraud.  First, Newkirk perpetrated the Maxim fraud knowing that "Calvin R. Darden, Sr." (an invented persona devised for the purpose of confusing his victims) was associated with Junior's receipt of $450,000 in connection with another of Reign Entertainment Group's business opportunities, and that such funds had never been returned.  Tr. 1973.  His criminal actions, undertaken in light of this admitted knowledge, Tr. 1973, demonstrate that repayment of loans by the non-existent "Calvin R. Darden, Sr." formed no part of the defendant's subjective intentions with respect to his fraud.  Second, the defendant in fact

did not return or facilitate the return of fraudulently obtained proceeds to his victims even after his fraud began to unravel.  Mark Weinberg's $4.9 million was returned only after the Government's seizure of those funds; Open Gate Capital's $3.1 million remains in the possession of Alpha Media Group.  The defendant did not care that his victims' loans would go unrepaid – his intent was to obtain Maxim Magazine through whatever fraudulent means might be necessary.

Newkirk further argues that his Guidelines offense level should not be enhanced by any amount of actual loss.  Def. Sub. at 15-16.  Although intended loss is the proper basis for calculating the Guidelines' loss amount, were the Court to assess the actual loss inflicted by the defendant, that amount would be $8 million, reflecting the $3.1 million obtained from Open Gate and the $5.5 million stolen from Weinberg, less the $600,000 returned by Bryan Cave to Weinberg in the immediate aftermath of the defendant's theft.  The Guidelines provide for credits against loss *only* with respect to funds returned to victims "before the offense was detected."  U.S.S.G. § 2B1.1, App. Note 3(E)(i).  Weinberg's $4.9 million was returned by the Government, following the seizure of those funds through a civil seizure warrant, in February 2014, *i.e.*, after detection of the Maxim scheme by the Government (and, of course, by Weinberg himself).  Newkirk, therefore, receives no credit for the return of those funds.  Moreover, Open Gate's funds remain in the possession of Alpha Media.  Newkirk's assertion that the loss to Open Gate was not "reasonably foreseeable" to him is baseless.  Newkirk personally negotiated the loan from Open Gate by making representations that the defendant knew at the time to be false.  The defense's argument that Newkirk inflicted either no actual loss or only $3.1 million in actual loss is meritless.

The defendant argues that the "sophisticated means" enhancement of U.S.S.G. § 2B1.1(b)(10) does not apply to the defendant's offense.  The defense first argues that Newkirk had no involvement in the creation of false or forged documents.  Def. Sub. at 17.  This is incorrect.  The evidence introduced at trial demonstrated that Newkirk was personally involved in the creation of the false personal financial statement by forwarding Junior a template for that purpose and Newkirk's subsequent dissemination of that document (itself containing information that Newkirk knew to be false) to his victims.  Newkirk also participated directly in the creation of a false physician's affidavit ostensibly verifying Senior's good health, and did so in January 2016, *i.e.*, months after Senior personally told Newkirk that Senior would have nothing to do with the Maxim deal.  *See* Tr. 933-36 (Junior's testimony regarding the need for, and the creation of, the false physician's affidavit).  Moreover, Newkirk participated in the negotiation and creation of every major fraudulent contract and proposed settlement agreement used throughout the Maxim scheme to induce lenders to part with their money or to delay their revealing the fraud to parties who might report Newkirk's activities.  In short, Newkirk's scheme was complex and intricate, not only in its execution, but in the defendant's attempts to conceal his crime.

Newkirk's argument that his own participation in the Maxim fraud could not have been "sophisticated" because he "only got involved [in the Maxim scheme] because he thought it was a legitimate deal to buy Maxim Magazine," is yet another example of the defendant's refusal to accept responsibility for his criminal conduct.  Newkirk, in fact, obtained his job at Bryan Cave by lying to that firm about his relationship with Senior and his ownership interests his purported "clients," including Reign.  He orchestrated the earliest attempts to conceal Senior's actual lack of involvement in the deal, for example by originating the idea for sham commitment letters and secret releases.  Contrary to the defense's assertion, the defendant "got involved" in the Maxim

fraud at the scheme's inception, knowing that this fraud would require him to deploy his legal expertise to navigate a complex series of negotiations regarding the non-existent assets of a non-existent guarantor.[1]

For these reasons, as well as those set forth in the Government's initial sentencing submission, the Government believes that the defendant's criminal conduct warrants a significant term of incarceration.

Dated:  April 18, 2016

        Respectfully submitted,
        PREET BHARARA
        United States Attorney for the
        Southern District of New York

By:    /s/ Andrew C. Adams
        Andrew C. Adams
        Sarah E. Paul
        Assistant United States Attorneys

---

[1] Newkirk similarly feigns innocence in seeking to avoid an offense level enhancement for the abuse of a position of private trust (an abuse forming the very core of his criminal conduct) and in seeking a mitigating role adjustment.  Def. Sub. at 18-22.  For the reasons set forth above and in the Government's April 14, 2016, sentencing submission, these arguments are also meritless.